O

**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CT-1 HOLDINGS, INC. | Case No. CV 13-08264-VAP<br>USBC Case No. 2:10-BK-19927-BR |
| DEBTOR, | ADVERSARY Case No. 2:13-AP-1245-BR |
| Screen Capital International Corp., | |
| Appellant, | **ORDER AFFIRMING-IN-PART, REVERSING-IN-PART, AND REMANDING THE MATTER TO THE BANKRUPTCY COURT** |
| v. | |
| Farhad Saadat, | |
| Appellee. | |

In the course of involuntary bankruptcy proceedings against debtor CT-1 Holdings, LLC ("CT-1"), Appellant Screen Capital International Corporation ("SCIC"), acting on behalf of CT-1's estate, brought an adversary proceeding to avoid allegedly fraudulent transfers CT-1 made to Appellee and Cross-Appellant Farhad Saadat. Finding that SCIC failed to plead its fraudulent transfer claims sufficiently, the bankruptcy court dismissed SCIC's complaint, with prejudice.  This appeal followed.

It is readily apparent to the Court that SCIC's complaint fails to plead the facts necessary to make out its claims for fraudulent transfer; as discussed below, the bankruptcy court properly dismissed it.  Dismissal with prejudice, however, was improper.  The bankruptcy court seems to have found that by the time SCIC filed an amended complaint, its claims against Saadat would be time-barred; the court therefore concluded granting SCIC leave to amend its complaint would have been futile. That conclusion is incorrect, because SCIC's claims could be related back to the date of its initial complaint, pursuant to Federal Rule of Civil Procedure 15(c)(1)(B).

But there are two other questions, presented by Saadat's cross-appeal, that will affect this matter on remand – and which the Court will also address below. (Because SCIC is entitled to amend its complaint on remand, it would be premature to resolve either question now.)  The first question is whether SCIC has standing to initiate this adversary proceeding on CT-1's behalf, at all.  If SCIC elects to file an amended complaint, the bankruptcy court should address that question sua sponte. The second question is whether a broad release, entered into by an entity allegedly related to SCIC, bars SCIC's claims against Saadat.  As release is an affirmative defense that Saadat will need to plead and prove, it is

premature to address it while SCIC may still file an
amended complaint that avoids the issue entirely.

## I. BACKGROUND

Resolving this appeal does not require much
discussion of the larger bankruptcy proceedings
underlying it.  The Court begins with the facts it gleans
from SCIC's complaint, which the Court accepts as true.
See In re Pomona Valley Med. Group, Inc., 476 F.3d 665,
671 (9th Cir. 2007) (applying the familiar civil standard
for evaluating a motion to dismiss to a bankruptcy
adversary proceeding).

CT-1 is part of a group of related now-bankrupt
entities, all involved in the entertainment business.  In
December 2007, CT-1 took out a $40 million loan, the
proceeds of which appear to have gone in part to pay off
other loans, but $560,000 of which went to "F. Saadat."
(1 ER 8-9.)  In February 2008, CT-1 borrowed $11 million
more, from which SCIC alleges $150,006 went to Saadat via
cashier's check.  (1 ER 10.)  (Additionally, though they
do not appear anywhere in the text of the complaint, SCIC
attached an exhibit indicating two more payments to
Saadat, in the winter of 2008, totaling an additional
$300,000.)  SCIC contends that by sometime in 2008 – and
perhaps in 2007 – CT-1 was insolvent.  (1 ER 12.)  In
March 2010, CT-1's creditors forced it, and its

3

affiliated entities, into Chapter 11 bankruptcy
proceedings.  (Id.)

    In the course of those proceedings, SCIC and the
bankruptcy trustee overseeing several of the debtors'
estates, including CT-1's, stipulated that SCIC would
have the authority to bring claims on the estates'
behalf.  (1 ER 5.)  SCIC then filed a complaint alleging
three substantive claims against Saadat in an attempt to
avoid the payments he received in 2007 and 2008.[1]

    Arguing that the scant allegations made against him
were insufficient to ground SCIC's claims, Saadat moved
to dismiss SCIC's complaint.  (See 1 ER 34-63.)
Moreover, Saadat argued, that dismissal should be with
prejudice, for two reasons.  First, SCIC's complaint was
filed so close to the statute of limitations on its
claims that the claims would be time-barred before SCIC
could amend its complaint.  Ordinarily, SCIC could avoid
that problem by relating its amended claims back to the
original complaint under Federal Rule of Civil Procedure
15(c)(1)(B), which allows "[a]n amendment to a pleading
[to] relate[] back to the date of the original pleading
when . . . the amendment asserts a claim or defense that

---

    [1] Three of SCIC's claims were for fraudulent
conveyance under California law; a fourth invoked a
provision of the Bankruptcy Code that allows a trustee to
recover the value of any transfer avoided by the other
three claims, 11 U.S.C. § 550.

arose out of the conduct, transaction or occurrence set out – or attempted to be set out – in the original pleading . . . ."  Saadat contended, however, that SCIC's complaint was so devoid of facts that it was just a placeholder to allow SCIC to evade the statute of limitations on its fraudulent conveyance claims – and therefore that SCIC should not be afforded Rule 15's protection.  (See 1 ER 61–62; 2 ER 1092–93.)

Second, Saadat raised the issue of an agreement that releases a broad range of people (allegedly including Saadat) from a broad range of claims (including SCIC's) made by any member of a group of plaintiffs (including SCIC).  (See 1 ER 58; 1 ER 90–91.)  While the bankruptcy court did not rely on the release in reaching its conclusion, Saadat raises it in his cross-appeal, so its details merit elaboration.

As noted above, this adversary proceeding is part of a larger involuntary bankruptcy involving several debtors, and at least one sizable loan.  One creditor, Aramid, agreed to release its claims, along with those of its affiliates, against the debtors and their "past and present officers, directors, servants, agents, attorneys, assigns, heirs, parents, subsidiaries, and each Person acting for or on behalf of any of them."  (See Appellant's Opening Br. at 5; Appellee's Opening Br. at

5

4.)  Saadat contended that SCIC is an affiliate of Aramid – and Saadat an intended beneficiary of the release – and therefore that SCIC had released its claim against Saadat.  (1 ER 59-60.)

The bankruptcy court held a hearing on Saadat's motion to dismiss SCIC's complaint.  (See 2 ER 1049-1122.)  The court was unpersuaded by Saadat's argument that the Aramid release barred SCIC's claims against him, finding that nothing properly before the court demonstrated that Saadat was a released party within the scope of the agreement.  (See 2 ER 1087-90, 1093-94.)  It granted Saadat's motion, however, on the basis that SCIC failed to plead facts sufficient to sustain its claims; the court dismissed the complaint with prejudice because it found an amended complaint could not relate back to the original complaint, and would therefore be time-barred.  (See 2 ER 1093, 1098-99, 1101-02, 1124.)

SCIC appeals, arguing the bankruptcy court held it to too high a standard of pleading in dismissing its claims, and erred again by dismissing its complaint without leave to amend.  (See generally Appellant's Opening Br. at i-ii.)  Saadat cross-appeals, arguing that SCIC lacks standing to pursue its claims against him in the first place, and that the release applies to bar claims against

Saadat.  (See generally Appellee's Opening Br. at i–ii.)
The Court now addresses those arguments.

## II. LEGAL STANDARD

The Court reviews de novo the bankruptcy court's
order dismissing a complaint for failure to state a
claim.  In re Mwangi, 764 F.3d 1168, 1173 (9th Cir.
2014).  The bankruptcy court's decision to make that
dismissal with prejudice is reviewed for an abuse of
discretion.  Anwar v. Johnson, 720 F.3d 1183, 1186 (9th
Cir. 2013).

## III. DISCUSSION

The Court takes the issues as follows:  First, did
SCIC plead sufficient facts to state a claim against
Saadat?  (It did not.)  Second, assuming SCIC's complaint
is pled insufficiently (it is), did the bankruptcy court
abuse its discretion by denying SCIC leave to file an
amended complaint?  (It did.)  Finally, the Court turns
to the issues raised in Saadat's cross-appeal, which
should be addressed by the bankruptcy court in the first
instance, in the fashion outlined below (should SCIC
elect to amend its complaint).

### A.  SCIC's Complaint Fails to State a Claim Against Saadat.

The gravamen of SCIC's claims against Saadat is that
Saadat was the recipient of fraudulent transfers of money

7

that should be returned to CT-1's estate (presumably for
the benefit of CT-1's creditors).  To make those claims,
SCIC needed to set forth "a short and plain statement of
the claim[s] showing [its] entitle[ment] to relief."
Fed. R. Civ. P. 8(a)(2).  Such a statement cannot consist
of only labels and conclusions, and it must be more than
a mere recitation of the claims' elements.  Bell Atl. Co.
v. Twombly, 550 U.S. 544, 555 (2007).  Instead, a
complaint must contain facts that, when assumed true,
would render its legal claims plausible.  Ashcroft v.
Iqbal, 556 U.S. 662, 678-79 (2009); Eclectic Properties
E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 995-97
(9th Cir. 2014).  SCIC's complaint does not pass muster
under this standard.

        The Bankruptcy Code "empowers a bankruptcy trustee to
invoke state law to recover the debtor's prepetition
transfers."  In re Acequia, Inc., 34 F.3d 800, 807 (9th
Cir. 1994); see 11 U.S.C. § 544(b)(1) ("[T]he trustee may
avoid any transfer of an interest of the debtor in
property or any obligation incurred by the debtor that is
voidable under applicable law by a creditor holding an
unsecured claim . . . .").  SCIC, having been tapped by
the trustee of CT-1's bankruptcy estate, attempted to use
California's fraudulent conveyance law to recover
transfers from Saadat in three different ways.

First, California law would allow avoidance of the payments to Saadat if CT-1 paid Saadat "with actual intent to hinder, delay, or defraud" any of CT-1's other creditors, Cal. Civ. Code § 3439.04(a)(1) – in other words, if CT-1 gave Saadat the money for the purpose of preventing anyone else it owed from getting paid.  This claim, which alleges fraud outright, requires details beyond those required by Rule 8(a) and Twombly/Iqbal. Screen Capital Int'l Corp. v. Library Asset Acquisition Co., 510 B.R. 266, 274 (C.D. Cal. 2014); see also Nishibun v. Prepress Solutions, Inc., 111 F.3d 138 (9th Cir. 1997) (unpublished table decision) ("A complaint alleging a violation of [§ 3439.04(a)] must . . . comply with Fed. R. Civ. P. 9(b)'s particularity requirements."); see generally Fed. R. Civ. P. 9(b) (subjecting fraud claims to a heightened pleading standard).  To make this claim, SCIC would be required to plead "the who, what, when, where, and how of the misconduct charged," Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and citations omitted); that is, "the times, dates, places, benefits received, and other details of the alleged fraudulent activity," Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).

Second, CT-1's conveyance to Saadat would be avoidable under California law if CT-1 did not receive "a

9

reasonably equivalent value in exchange" for its payments
and:  (A) it "[w]as engaged or was about to engage in a
business or transaction for which [its] remaining assets
. . . were unreasonably small in relation to the business
or transaction"; or (B) it "[i]ntended to incur, or
believed or reasonably should have believed that [it]
would incur, debts beyond [its] ability to pay as they
became due."  Cal. Civ. Code § 3439.04(a)(2).  In other
words, if CT-1 paid more than it should have for
something, and would be left with assets insufficient to
carry on or undertake its business – or should have
believed, having paid Saadat, that it would be unable to
pay its debts – then the detrimental transfer would be
deemed fraudulent, and rendered avoidable.

    Third, the transfers would be avoidable, but only as
to a creditor whose claim arose before the transfers, if
CT-1 made them "without receiving a reasonably equivalent
value in exchange," and was insolvent at the time of
transfers, or as a result of them.  <u>Id.</u> § 3439.05.[2]
(Since this claim and a claim under § 3439.04(a)(2) do
not require fraudulent intent, neither is subject to Rule
9(b)'s heightened pleading standards.  <u>Screen Capital</u>

---

    [2] There is a difference between having unreasonably
small assets, per § 3439.04(a)(2), and being insolvent,
per § 3439.05, but it is not relevant here.  <u>See</u>
<u>Intervest Mortg. Inv. Co. v. Skidmore</u>, 655 F. Supp. 2d
1100, 1105 (E.D. Cal. 2009) (differentiating having
unreasonably small assets from being insolvent).

1  Int'l Corp., 510 B.R. at 274.)

2

3      SCIC's complaint fails against this backdrop.  To

4  begin, the complaint names Saadat a defendant, but

5  nowhere does it say who Saadat is.  The complaint merely

6  alleges some money was transferred to him, which is far

7  from "the who, what, when, where, and how of the

8  misconduct charged."  Cafasso, 637 F.3d at 1055.

9

10     Setting aside that omission, there are no facts

11 alleged whatsoever to make it plausible – rather than

12 merely speculative – that CT-1's conveyances to Saadat

13 were intentionally fraudulent.  The closest SCIC comes is

14 to allege that "[b]ased on, among other things" – which

15 remain unspecified – "the fact that [CT-1] often used its

16 funds to pay the gambling debts of" one of its

17 principals, "and to make payments to entities that were

18 not entitled to receive [its] funds," CT-1 made the

19 transfers to Saadat "with actual intent to hinder, delay

20 or defraud its creditors."  (1 ER 19.)  The most the

21 complaint alleges about the specific payments to Saadat

22 is how much they were for and when they took place.  See

23 Nishibun, 111 F.3d at 138 (holding a section

24 3439.04(a)(1) claim properly dismissed when the complaint

25 "simply sets forth neutral facts necessary to identify

26 the transaction").

27

28

                                11

1    Likewise, the complaint fails to allege a requisite
2    element of either of its other two substantive claims,
3    i.e., that CT-1 did not receive anything of reasonably
4    equivalent value for its payments to Saadat.  On that
5    score, the complaint comes nearest the mark when it
6    states that "because [Saadat] does not appear to be a
7    creditor of [CT-1], and for other reasons" – again,
8    unspecified – "[SCIC] is informed and believes that [CT-
9    1]" did not "receiv[e] reasonably equivalent value" in
10   exchange for its payments to Saadat.  (1 ER 20.)  That
11   Saadat "does not appear to be a creditor" says nothing
12   about whether CT-1 got its money's worth, e.g., for
13   something it purchased from Saadat.  Again, SCIC is not
14   alleging a fact that makes its legal claims plausible; it
15   is merely inviting speculation that they could be.[3]
16
17       In any event, SCIC could satisfy its pleading
18   requirement, at least as to the reasonably-equivalent-
19   value element, simply by stating – assuming it can do so
20   consistently with Federal Rule of Civil Procedure 11 –
21   that CT-1 received nothing in exchange for its payments
22
23   _____
         [3] At the bankruptcy court's hearing on Saadat's
24   motion, the question whether SCIC pled reasonably
     equivalent value successfully led to a discussion about
25   what one must plead under section 3439.04(a)(2) or
     section 3439.05 if a debtor receives nothing at all in
26   return for its payment – presumably what SCIC intended to
     plead – instead of only nothing of reasonably equivalent
27   value.  (See 2 ER 1071–76.)  The answer:  a plaintiff can
     allege simply that the debtor received nothing at all in
28   exchange for its payment.

to Saadat.  As it stands, however, the bankruptcy court
held correctly that SCIC satisfied neither its pleading
obligations as to section 3409.04(a)(1) or its pleading
obligations as to sections 3409.04(a)(2) and 3409.05.

**B.   SCIC Should Be Granted Leave to Amend its Complaint.**

If the bankruptcy court dismissed SCIC's complaint
properly, the question then becomes whether SCIC should
have had leave to file an amended complaint.  That
decision was left to the bankruptcy court's discretion,
Anwar, 720 F.3d at 1186, which the bankruptcy court
abused if it either applied the wrong legal standard in
making its ruling, or if it applied the correct standard
in a manner that was illogical, implausible, or without
support in inferences that can be drawn from the record
before it, United States v. Hinkson, 585 F.3d 1247,
1261–62 (9th Cir. 2009) (en banc).

The parties assume that the reason for the bankruptcy
court's decision was that it found SCIC's complaint so
deficient that an amended complaint could not be made to
relate back to it, SCIC's claims would thus be time-
barred, and amendment would therefore be futile.  (See
Appellant's Opening Br. at 24; Appellee's Opening Br. at
22–23.)  That rationale, however, is not one the
bankruptcy court itself gave.  Instead, to find out what,
precisely, they are arguing over on appeal, both parties

turn to a statement the bankruptcy court made in a separate-but-related matter, heard later the same day as argument on Saadat's motion:

> I have in the past, not this morning, clearly, but I have in the past ruled – I can't keep track, there's so many of these, but I know I have, that if it doesn't state it in the original complaint – facts, that you can't relate back because the statute has run.  Again, I didn't say it this morning, and I – but I know I have said it, and that's – that's always been my – my belief in these cases.

(2 ER 1119.)

The parties' reliance on that statement is puzzling, however, as it suggests that <u>unlike</u> SCIC's complaint against Saadat (i.e., the complaint discussed "this morning"), the afternoon complaint was too deficient to support the relation-back of an amended complaint.

Nevertheless, assuming that the bankruptcy court's rationale for dismissing with prejudice the complaint against Saadat was the rationale the parties offer, the bankruptcy court's conclusion in error.  An amended complaint may relate back to an original one, and therefore avoid a time-bar, if its claims arise out of the same conduct as that alleged (or attempted to be alleged) in the original complaint.  <u>Williams v. Boeing Co.</u>, 517 F.3d 1120, 1133 (9th Cir. 2008).  The relevant question is whether SCIC's original complaint provided Saadat with adequate notice of what its amended complaint would charge.  <u>Id.</u> at 1133 n.9.

1    It is clear from the original complaint that SCIC

2 means to allege that a limited set of transfers,

3 specified in the complaint, were made to Saadat

4 improperly under one or more of three specific California

5 statutes.  So long as an amended complaint addresses the

6 same set of transactions, it relates back to the original

7 complaint, and if the original complaint was not time-

8 barred, the amended complaint should not be.  <u>See</u> <u>In re</u>

9 <u>Markus</u>, 313 F.3d 1146, 1150 (9th Cir. 2002) (noting that

10 relation-back is permitted when the amended claims "will

11 likely be proved by the same kind of evidence offered in

12 support of the original pleadings" (internal quotation

13 marks and citations omitted)).  Accordingly, the order of

14 the bankruptcy court is reversed inasmuch as its

15 dismissal of SCIC's complaint was with prejudice.  On

16 remand, the bankruptcy court should permit SCIC to file

17 an amended complaint within whatever reasonable timeframe

18 the bankruptcy court directs.

19

20 **C.   Saadat's Cross-Appeal.**

21    What remains are two issues Saadat raises in his

22 cross-appeal.  First, there is the question whether a

23 broad release, the subject of litigation in the

24 bankruptcy court and before another judge of this Court,

25 bars SCIC's claims against Saadat.  This Court is not in

26 a position to answer that question, because release is an

27 affirmative defense that must be raised in a pleading and

28

proven by Saadat, Fed. R. Civ. P. 8(c)(1); Monge v. Maya Magazines, Inc., 688 F.3d 1164, 1170 (9th Cir. 2012), and since SCIC may yet file its own pleading bearing on the question, it is best addressed in the first instance (if necessary) by the bankruptcy court.

Second, there is a question whether SCIC has standing to sue Saadat on behalf of the bankruptcy trustee, at all.  That question should be tackled sua sponte by the bankruptcy court if SCIC elects to file an amended complaint.  The rule is this:  If SCIC is a creditor of CT-1, and thus stands to benefit from the estate's recovery of fraudulent conveyances, then SCIC does not lack standing to bring this suit on the estate's behalf – at least, not for the reason that only the trustee, acting for the estate, is entitled to sue for avoidance. In re Parmetex, Inc., 199 F.3d 1029, 1030–31 (9th Cir. 1999).  If SCIC is not a creditor, it has no injury; if SCIC has no injury, it has no constitutional standing, Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 (2014).  If SCIC has no constitutional standing, its suit must be dismissed sua sponte, see Fed. R. Civ. P. 12(h)(3) (requiring a court to dismiss an action any time it finds it lacks subject-matter jurisdiction); Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1227 (9th Cir. 2011) (observing that standing is an issue pertaining to the court's subject-matter jurisdiction).

1

2                              **IV. CONCLUSION**

3          The bankruptcy court properly dismissed SCIC's

4   threadbare complaint for failure to state a claim, and is

5   affirmed on that front.  The bankruptcy court erred,

6   however, if it denied SCIC an opportunity to amend its

7   complaint because it thought any amendment would be time-

8   barred.  To the extent that rationale was the basis of

9   its decision, the bankruptcy court's judgment is

10  reversed; on remand, it should offer SCIC the opportunity

11  to file an amended complaint.  If SCIC elects to file an

12  amended complaint, the bankruptcy court should address

13  the question of SCIC's standing to do so, and if

14  necessary (at the appropriate time), the applicability of

15  the broad release to SCIC's claims against Saadat.

16

17

18  Dated: October 27, 2014_____

19                              VIRGINIA A. PHILLIPS
                            United States District Judge

20

21

22

23

24

25

26

27

28